STATE OF IOWA, Appellee, v. JOHN W. WEBB, Appellant.

No. 47143.

(Reported in 31 N. W. 2d 337)

694

March 9, 1948.

Rehearing Denied May 7, 1948.

W. N. Williams and Paul B. Holleran, both of Clinton, for appellant.

Robert L. Larson, Attorney General, Don Hise, Assistant Attorney General, and Carroll Johnson, County Attorney, for appellee.

Smith, J.—The indictment, in usual form, charged that defendant on or about October 27, 1946, "willfully and maliciously set fire to a building known as the Clinton Superior Laundry, in violation of section 707.2 of the 1946 Code of Iowa."

Defendant (age 39) and one Blandford were equal partners in ownership and operation of the laundry in a leased building in Clinton. Both partners and Mrs. Webb were in the place of business the evening of Sunday, October 27, 1946. There was some discussion over an alleged discrepancy in the books kept by defendant and his wife. Blandford testifies there was a cash shortage of the amount of a check "in the vicinity of $50." Defendant testifies the check was for $37.50 and that "it wasn't down in the sheet. I explained it to him and he was satisfied."

The evidence shows the partnership was "hard up" and having some financial difficulties, that Blandford was demanding an audit of the books and that defendant finally consented—at least that an auditor be called in to determine what would be the cost of such audit.

Defendant and wife remained at the laundry that Sunday evening after Blandford left. Defendant says they left sometime after 10 o'clock and reached home between 10 and 11 o'clock; that he went to bed and slept until wakened by his wife at the telephone who exclaimed: "Oh my God! The laundry is on fire!" He thinks this was about 1:30 a.m. The chief

of police says the telephone call to Mrs. Webb was at 1:25 a.m. The fire alarm was turned in about 12:45.

In view of our disposition of the appeal we do not detail the testimony of all the various witnesses or all the various exhibits offered in evidence. We are concerned principally with the State's Exhibit 8, a writing signed by defendant and the evidence bearing on its execution. The exhibit is as follows:

"November 8, 1946.

"My name is John William Webb. I live at 319 15th Ave. S., Clinton, Iowa. This statement is made of my own free will and accord, without threat or promise being made to me and after being advised that anything I say here will be used against me.

"On the night of Oct. 27th my wife and I were in the Clinton Superior Laundry checking over the books. My partner was there also. He left and my wife and I stayed there until about 10 p.m. We went home. I then left home and returned to the laundry alone. I drove the company truck, it is a red panel truck. I don't remember where I parked the truck. I entered the building as usual from the front door. I don't know what time it was. I had a couple of drinks, but I was not drunk, I didn't have very much to drink. I gathered up papers from around the place. I got a empty paper milk bottle and filled it with gasoline which was stored in a five-gallon can back of the laundry. I didn't take the can of gas with me. I filled the milk bottle full. I took a ladder that was in the back of the laundry and put it up to a trap door in the ceiling in the front of the laundry. There was a cover over the trap door. I removed the cover and went up into the attic. I put the papers in the front part of the building over the office. I set fire to the papers and not to the gasoline which I had put in the bottle. The bottle was near the papers. I used a match to light the fire. I didn't wait to see if it got a good start, but it was burning when I left. I put the ladder back where I got it. I left by the front door. The door has a night lock on it. The door locks when it is closed. When I got home I went to bed right away. My wife was still up when I got home. We both went to bed. My wife called me

when the police called to say that our place was on fire. I set the fire so that we could get a loan and get the bills caught up. We were having trouble making all our payments in the place. My partner had nothing to do with this. I did it by myself.

"John W. Webb.

"The above statement is true.
"WITNESS: H. W. Thomson, Chief of Police.
"Zack T. Cook."

The exhibit is typewritten except the various signatures and the words "The above statement is true", which words are admittedly in defendant's own handwriting.

██ ██ I. Defendant assigns error on the refusal of the trial court to withdraw this exhibit from the consideration of the jury as having been obtained by threats and promises made by the county attorney. The evidence would not have justified such exclusion by the court.

The negotiations leading to its execution were between defendant on the one hand, and the county attorney and a criminologist from Chicago on the other, and neither of the latter testifies. Defendant testifies that on the day the statement was signed he voluntarily submitted to a lie-detector test. The man from Chicago operated the machine. He and defendant were in a little room off the county attorney's office. The county attorney, state fire marshal, chief of police, and perhaps others, were in the adjoining room and the rooms were connected by an intercommunicating loud-speaker system to enable those in the main room to hear what transpired in the little room.

Defendant was first interviewed by the Chicago man alone for a time and says he steadfastly denied having set the fire though constantly accused by the expert of not telling the truth. The result of the lie-detector tests is not shown. Finally defendant asked the expert to send in the county attorney.

No one else was present at the interview between defendant and the county attorney that followed. Defendant testifies he told the county attorney:

"I think this thing has went far enough; now, let's get down to business * * * you either put me under arrest or I

am going to get out of here. I am satisfied that I can't satisfy you fellows without telling you I did it and I am not going to do that * * *."

He says the county attorney told him he had definite proof defendant set the fire to which he (defendant) responded: "Well, if you have * * * why don't you just place me under arrest?" There was further questioning in which defendant maintained his innocence.

Finally, according to defendant, the county attorney said: "How do you know your wife didn't set that fire? * * * She could have got the boy to help her, couldn't she? * * * If you didn't do it, your wife and son did."

Defendant says the county attorney threatened to prosecute the wife for it with the boy as an accomplice. Then: "I told him I would make a deal with him if he would promise to leave my wife and family alone, I would sign anything." They then went into the other room where the statement was prepared and signed. Defendant says he added the words in his own handwriting at the county attorney's request.

The assistant fire marshal testifies he was present in the outer room throughout the entire session and in a position to hear all that was said. He says defendant arrived between 4 and 4:45 p.m.; that defendant was in the little room with the Chicago expert until about 5:30 when the latter came out and sent the county attorney in; and about thirty minutes later both defendant and the county attorney came out, after which the statement was prepared and signed. The witness says he heard no threats or promises made to defendant to induce the signing of the statement.

The chief of police gave similar testimony though he admits he was not present the entire time. Another witness, officer Clancy, who was present testifies he heard everything the county attorney said and that he heard no coercion, threats or promises of any kind. He also testifies to conversations he had with defendant later the same day which would be quite inconsistent with defendant's contention as to why he signed the statement: "He told me he felt better after making this confession [statement]. * * * I asked him if he really did go

home after setting this fire and go to bed and go to sleep, and he said that he did ‧ * * * he slept sound." He made no protestations of innocence and talked freely. It may of course be argued defendant was still, at the time of these conversations, under the influence of the alleged threat to implicate his wife and son unless he confessed. However, it was for the jury to determine under proper instruction, whether the statements were free and voluntary. State v. Storms, 113 Iowa 385, 85 N. W. 610, 86 Am. St. Rep. 380; State v. Hofer, 238 Iowa 820, 828, 28 N. W. 2d 475, 480. Where the confession appears to have been free and voluntary, the burden is on defendant to show otherwise. State v. Icenbice, 126 Iowa 16, 101 N. W. 273; State v. Plude, 230 Iowa 1, 6, 296 N. W. 732.

██ II.    But defendant on appeal argues that the instruction given was inadequate and that the court erred in refusing to give a requested instruction to the effect that the statement was not to be considered unless found to have been "made freely and voluntarily and not procured by undue influence in the way of promise or advantage, however slight, to the defendant, if the confession was made; or threat of any harm to follow if the confession was not made * * *."

We have examined the instruction actually given and find it sufficient. The jury was in effect told that *"before a confession can be given any weight or consideration by you, you must find that it was freely and voluntarily made, without the influence of fear or promise of favor or reward."*

There was elaboration beyond the parts quoted above in both the requested instruction and the one given. There was no material difference however between them. The contention here made cannot be sustained.

██ III.    Error is assigned upon the trial court's failure to instruct upon the necessity of corroborative evidence to support a confession. Section 782.7, Iowa Code, 1946, provides:

*"The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with [by] other proof that the offense was committed."* (Italics supplied.)

In response to this assignment the State urges: (1) That instruction on corroboration is not necessary where the alleged statement is merely an admission of facts; and (2) that even if the statement be deemed a confession, instruction on corroboration is unnecessary if there is in fact other proof of the commission of the crime.

The first proposition is bottomed on an assumption that the written statement, Exhibit 8, was not a confession but a mere admission of facts. The assumption is not warranted. The writing signed by defendant would, in absence of the quoted statute or the comparable common-law rule, be sufficient to support a verdict of guilty. It included every material fact necessary to conviction.

The State's argument at this point is not persuasive. It is urged the statement does not state that defendant "set fire to the *building*", but that he only lighted some papers and put the gasoline (in a paper container) near the papers. It is true he does not directly say that any part of the building was set fire to but we do not attach any importance to that technical omission. The statement does reveal that "our place was on fire. *I set the fire* so that we could get a loan and get the bills caught up." That defendant does not say he applied the match directly to the building is quite immaterial.

The entire writing refutes the State's argument. The statement is much fuller than those in cases cited by the State: State v. Knowles, 48 Iowa 598; State v. Skaggs, 153 Iowa 381, 383, 133 N. W. 779; State v. Fortune, 196 Iowa 995, 195 N. W. 740; State v. Norton, 227 Iowa 13, 286 N. W. 476; State v. Gallagher, 236 Iowa 123, 16 N. W. 2d 604.

■ IV. But the State also argues that instruction on corroboration was unnecessary *if there was in fact corroborative evidence sufficient to satisfy the statute*. We deem this the crux of the appeal for we must hold there *was* other ample evidence "that the offense was committed."

Defendant requested an instruction that the written statement "purporting to be the confession of the defendant, will not warrant a conviction of the defendant *unless you find and believe beyond a reasonable doubt* from other evidence or lack

of evidence in the case that the defendant committed the offense as charged in the indictment." (Italics supplied.)

Of course this request goes far beyond the statute which merely requires that the confession be *"accompanied with [by] other proof that the offense was committed."* There is no suggestion in the statute that the "other proof" must be sufficient to establish defendant's guilt "beyond a reasonable doubt" or even that it must tend to prove his connection with the commission of the alleged crime. In fact, the language of the statute requires other proof of the *corpus delicti* rather than of defendant's connection with the commission of the alleged crime. See State v. Turner, 19 Iowa 144, 147; State v. Thomsen, 204 Iowa 1160, 216 N. W. 616.

However the State makes no point of the insufficiency or incorrectness of the requested instruction. Doubtless attorneys for the State had in mind what was said in State v. Rowe, 238 Iowa 237, 246, 26 N. W. 2d 422, 427:

"While requested Instruction No. 1 may not have been well phrased, or in the best of form, and included matters not proper for instruction, still it did call attention of the court to the matter which appellant sought to have the jury instructed upon."

We therefore assume for our purpose here that the requested instruction was sufficient. Though it demanded much more than the statute required, it did call the trial court's attention to the matter and indicated defendant's desire that the jury be instructed on it. See, also, Kinyon v. Chicago & N. W. Ry. Co., 118 Iowa 349, 361, 92 N. W. 40, 96 Am. St. Rep. 382.

█ █ V. We proceed therefore to inquire whether the court, after being reminded of the matter, erred in failing to instruct on corroboration, *in view of the fact that there was ample corroborative evidence in the record.* The attorneys for the State admit they find no Iowa decision in point. They cite State v. Howard, 102 Or. 431, 203 P. 311, and Commonwealth v. DiStasio, 294 Mass. 273, 1 N. E. 2d 189. There is an Oregon statute quite similar to our own. Massachusetts has no such statute but her court recognizes the common-law rule requiring corroboration

of confessions by other evidence tending to prove the corpus delicti.

Our Code section 782.7 seems to be a substantial enactment or restatement of the common law requiring corroboration by independent evidence of the corpus delicti. 22 C. J. S., Criminal Law, section 839; 23 C. J. S., Criminal Law, section 916; Commonwealth v. Killion, 194 Mass. 153, 80 N. E. 222, 10 Ann. Cas. 911; 20 Am. Jur., Evidence, sections 1233, 1242. It clearly relates to corroboration of the corpus delicti and does not require other evidence tending to *connect defendant with the commission of the offense* as do Code section 782.4 (relating to testimony of prosecutrix in rape and kindred cases) and section 782.5 (relating to testimony of accomplice) both found in the same chapter. We have held the confession alone may be sufficient to connect a defendant with the commission of the act. State v. Icenbice, supra (126 Iowa, at page 20); also to furnish the necessary corroboration of the testimony of the prosecutrix in a rape case. State v. Speck, 202 Iowa 732, 210 N. W. 913.

Defendant cites no case which is decisive of the proposition we are now considering. Two Iowa cases are cited however in which it was held the presence of corroborative evidence in the record did not avoid the necessity of instructing as to corroboration. State v. Carnagy, 106 Iowa 483, 76 N. W. 805; State v. Ervin, 227 Iowa 181, 287 N. W. 843. Both were rape cases involving corroboration of the prosecutrix under section 782.4. There is a similar holding as to necessary corroboration of the testimony of accomplices under section 782.5. State v. Myers, 207 Iowa 555, 557, 223 N. W. 166.

Are those precedents controlling here or should we follow the decisions in other jurisdictions such as those cited by the State and referred to above? The reason for protecting the defendant from uncorroborated testimony of prosecutrix or accomplice under sections 782.4 and 782.5 *"tending to connect [him] with the commission of the offense"* seems clear. It grows out of the danger that such testimony may be the result of, or colored by, the feeling or prejudice or self-interest of the witness. See discussion in State v. Carnagy, supra. The propriety of

warning the jury of such danger and advising of the statutory safeguard against it is also clear.

It should however be pointed out that all these requirements for corroboration are primarily rules of evidence and not directives for instructing the jury. The rule, if any, requiring the instruction is judicial, not statutory. It grows out of the nature of the testimony to be corroborated and not out of any expressed intention or direction in the statute.

The principal danger incident to receiving in evidence and considering the effect of confessions is the possibility that they may not be freely and voluntarily and understandingly made. The requirement for *"other proof that the offense was committed"* (that is other proof of the corpus delicti) is to furnish a factual basis for the confession. The required "other proof" is perhaps not strictly corroborative but rather supplemental. The language of the statute is somewhat significant. It does not mention "corroboration" but says "unless *accompanied with* [*by*] other proof"—not of defendant's guilt, but that *someone* is guilty. Of course the "other proof" must be substantial though it need not be conclusive. 22 C. J. S., Criminal Law, section 839, page 1474, note 42; 20 Am. Jur., Evidence, section 1234.

Upon these considerations we think failure to instruct does not constitute error. See State v. Howard, supra; Commonwealth v. DiStasio, supra; and 23 C. J. S., Criminal Law, section 1231, page 796, and cases cited under note 37. The statute makes it the duty of the court to direct a verdict for defendant if the evidence of the confession is not accompanied by other proof of the fact that a crime has in fact been committed. This "other proof" is of course to be appraised by the jury, along with all the evidence, to determine the issues in the case *but not to pass on its sufficiency to satisfy the statute.* That is the function of the court.

VI. What we have said necessarily disposes of defendant's claim for a directed verdict. We have held there was ample other evidence to accompany the confession and satisfy the statute. The confession itself, being admissible, was evidence both of the corpus delicti (20 Am. Jur., Evidence, section 1233) and of defendant's connection with the commission of

the offense. It was for the jury to pass on the weight of the evidence as a whole and there was sufficient support for the verdict.

■ VII. Defendant complains of the refusal to allow a doctor to testify that defendant's wife was under the doctor's treatment on November 1, 1946, that her trouble was mental, due to change of life, and that she was sent to a hospital for shock treatments.

The argument in support of this assignment is that the evidence was material as bearing on defendant's state of mind when he signed the confession. Defendant testifies that the officers questioned his wife sometime after the fire and prior to the date of the confession and that she was sick at the time. There is no testimony by defendant as to his state of mind being affected on November 8, 1946, by his wife's illness. It is true he claims he signed the confession because of threats that otherwise his wife and son would be prosecuted but there is no evidence that he mentioned his wife's illness in that connection or referred to it in any way except to say "you know my wife, she couldn't possibly crawl up in that attic."

We agree with the trial court that there was no foundation for the offered testimony and that the offer was at least premature. We find no prejudicial error in its rejection.

There is much evidence we have omitted, nor have we discussed all the authorities cited in the briefs. What we have said disposes of all the contentions made by defendant on appeal and must result in an affirmance of the ruling of the trial court. The jury has, upon sufficient evidence, brought in a verdict of guilty and no ground is shown for setting it aside.— Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, MANTZ, and HAYS, JJ., concur.