STATE OF IOWA, appellee, v. ROLAND LEROY LEEDOM, appellant.

No. 48896.

(Reported in 76 N.W.2d 773)

MAY 9, 1956.

Edward F. Samore, John F. Pirog and William W. Gates, all of Sioux City, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Donald E. O'Brien, County Attorney, for appellee.

THOMPSON, J.—On the evening of May 14, 1955, about 10:30 p.m., Everett Denning, a filling station attendant in Sioux City, was shot and seriously wounded in the left arm and chest while seated in the station. There is no fair doubt that the shot was fired from across the street by the defendant. He admitted as much, both in his written and signed confession and as a witness upon the trial of the case. He was indicted for the crime of assault with intent to commit murder, and upon trial to a jury was found guilty as charged. Upon this appeal he makes two major contentions, as shown by his assigned errors and arguments thereupon. Further facts will be set out in discussing these complaints.

I. First to be considered is the contention that there was no sufficient corroboration of the defendant's confession, which his counsel think was merely a written admission. We think the paper introduced in evidence contains all the essential elements of a confession, and further that it is immaterial whether it be termed a confession or admission so far as the point here involved is concerned. The defendant was seventeen years of age at the time of the attack. He had a record of irresponsibility, to put it charitably. He had enlisted in the Marine Corps but had been discharged after three and one-half months of training; he says because of physical disability. This occurred some months before May 14, 1955, and since that time he had been unemployed. He had been drawing the amount allotted to discharged members

of the armed forces, $26 per week for 52 weeks. The transaction seems to show small profit to the United States Government in this particular case.

On May 14, 1955, defendant borrowed an automobile from an uncle and set out upon an evening's entertainment. He picked up another lad, sixteen years old, and two young girls. Their travels took them into South Dakota, where they purchased a considerable quantity of beer. They also attended a drive-in theater, and defendant says he became involved in some disagreement with "his girl." According to his story, during the course of the evening's activities he drank two six-packs of beer, and two stray bottles which he had concealed in the garage at his home. After leaving the other lad and the girls, he drove home where he lived with his father and mother, got his rifle, a .32 calibre Winchester special which he had purchased upon his discharge from the Marine Corps. He had training in the use of small-bore firearms while with the marines. He loaded the rifle at his home, then got into the car again and started, he says, for Winnebago, Nebraska. He wished to "drive off a little of the beer", and took the rifle along thinking he might see a deer on the way.

However, when he had proceeded six or seven blocks from his father's home, a different target presented itself. He stopped across the street from a filling station at 1022 Dace Street, in Sioux City. Everett Denning was sitting in a chair in the station. The defendant rested the rifle on the door, aimed it, and shot Denning in the arm, hand and chest, inflicting severe although not fatal wounds. He then drove across the Missouri River, and was arrested by an officer of the Nebraska State Highway Patrol a short distance south of South Sioux City, Nebraska, for speeding. The officer ordered Leedom to proceed to the courthouse in Dakota City, Nebraska, but when they arrived there the defendant shut off his lights and attempted to speed away. The patrolman followed and caught him. The Winchester rifle was found in his car, with an exploded cartridge in the chamber. On the morning of the 16th upon questioning by the sheriff of Dakota County, Nebraska, and other officers, he admitted shooting Denning.

Section 782.7, Code of Iowa 1954, is this: "The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed."

■ It is the thought of counsel for defendant that the "other proof" is lacking. At times, counsel seem to be urging that there must be other evidence aside from the confession which tends to connect defendant with the commission of the crime. Here they confuse the rule in regard to corroboration of confessions with that governing the corroboration of the testimony of accomplices. See section 782.5, Code of Iowa 1954. But it is not necessary that the "other proof" required by section 782.7, supra, do more than show that the offense was committed by someone. State v. Saltzman, 241 Iowa 1373, 1378, 44 N.W.2d 24, 26, 27; State v. Webb, 239 Iowa 693, 702, 31 N.W.2d 337, 342 ("We have held the confession alone may be sufficient to connect a defendant with the commission of the act.") ; State v. Icenbice, 126 Iowa 16, 20, 101 N.W. 273, 274.

■ Counsel urge that in any event there is no showing that the crime charged was committed by anyone. In this they misconceive the record. The corpus delicti amply appears from the testimony of Dr. William M. Krigsten, who cared for Denning, and who says he found him in a critical condition, and he took a good deal of lead out of his hand and arm, and a large piece of lead from his chest. He says "It was part of a bullet, at least it was pieces of lead." There is also the testimony of several other witnesses who told of the serious injuries Denning suffered.

In addition there is the testimony in open court of the defendant himself, who said that he aimed his gun at the filling station across the street, and he remembered hearing it go off. The complaint at this point lacks merit. There is ample evidence in the record of the corpus delicti, aside from the defendant's confession.

II. Perhaps the complaint urged most strongly by counsel for the defense concerns the refusal of the trial court to submit included offenses. Being of the opinion that the evidence showed either the commission of the offense of assault with intent to commit murder or no offense, the court refused to submit what

defendant thinks were the necessarily included offenses of assault with intent to commit manslaughter, assault with intent to inflict great bodily injury, assault and battery and assault. Section 785.6, Code of Iowa 1954, provides that a defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment. When such offenses are submitted it is the duty of the jury, and it is generally and properly so instructed, if it finds against the defendant, to find him guilty of the highest offense proven by the evidence; and if it finds him not guilty of the highest offense submitted, it should so determine, and then consider the other offense. But if only the charged offense is submitted, without included offenses, and it finds him not guilty of that offense, then it must return a verdict of not guilty. In either case, the jury should find a verdict of not guilty of the highest offense if the evidence fails to convince it beyond a reasonable doubt. When included offenses are submitted, it then considers whether it should return a verdict of guilty of one of those; but if they are not submitted, then upon a finding of not guilty of the major offense the defendant is in no further jeopardy. It might be argued that a defendant is in better case where the included offenses are not submitted. But we have many times held it is reversible error to fail to submit such offenses in a proper case; and so, here, we must consider whether the trial court should have submitted all or any of the various kinds of assaults which counsel for the defendant have enumerated.

■■ Murder is defined by section 690.1, Code of Iowa 1954, as the killing of "any human being with malice aforethought, either express or implied." We are not here concerned with the distinction between murders of the first and second degrees, since Code section 690.6, which defines "assault with intent to commit murder", by its terms includes both degrees in the inclusive term "murder." Manslaughter is the unlawful killing of a human being without malice. State v. Johnson, 211 Iowa 874, 879, 234 N.W. 263, 266; State v. Brown, 152 Iowa 427, 437, 132 N.W. 862, 866; State v. Spangler, 40 Iowa 365, 366. A specific intent to kill is not essential to the crime of murder of the second degree. State v. Baratta, 242 Iowa 1308, 1313, 49 N.W.2d 866, 869; State

v. Johnson, supra, at page 879 of 211 Iowa, page 266 of 234 N.W.; State v. Burris, 198 Iowa 1156, 1158, 198 N.W. 82, 83, 84. Malice, which is essential to both degrees of murder, is defined as "that condition of the mind which prompts one to do a wrongful act intentionally, without legal justification or excuse. It does not mean mere spite, hatred, or ill will, but does signify that state of disposition which shows a heart regardless of human life." State v. Burris, supra, 198 Iowa 1156, 1158, 198 N.W. 82, 84. We approved this definition in State v. Rutledge, 243 Iowa 179, 193, 47 N.W.2d 251, 260.

We have repeatedly held that reversible error will not appear because of failure to submit included offenses unless two elements concur: (1) the claimed included offense must be necessarily included in the offense charged, and (2) the record must contain evidence justifying a finding of such included charge rather than of a higher offense. State v. McCall, 245 Iowa 991, 997, 63 N.W.2d 874, 877; State v. Johnson, 221 Iowa 8, 11, 12, 264 N.W. 596, 267 N.W. 91. A corollary to this rule is that it is not error to omit submission of included offenses when the evidence shows the accused is guilty either of the offense charged or of no offense. It is not sufficient that as an abstract proposition there may be included offenses; the evidence must be such that the jury might find the defendant not guilty of the major crime charged but guilty of one of the inclusions. State v. Holoubek, 246 Iowa 109, 112, 66 N.W.2d 861, 863; State v. Spridgen, 241 Iowa 828, 831, 43 N.W.2d 192, 193, 194; State v. Woodmansee, 212 Iowa 596, 616, 233 N.W. 725, 735; State v. Grba, 196 Iowa 241, 251, 194 N.W. 250, 254, 255; State v. Quan Sue, 191 Iowa 144, 152, 179 N.W. 972, 975; State v. Hoot, 120 Iowa 238, 247, 94 N.W. 564, 567, 98 Am. St. Rep. 352. Many of these cases closely resemble in their facts the one now before us.

In the Woodmansee case the defendant was convicted of murder of the first degree. The deceased died from a severe beating. The trial court submitted only the two degrees of murder, and we said these were the only offenses of which the defendant could have been convicted; that he was guilty either of some degree of murder or not guilty. The defendant in the Grba case was convicted of the crime of murder of the first degree, the

court submitting only that offense. The deceased had come to his death from a dynamite charge. We said the defendant was guilty either of first-degree murder or not guilty. In the Quan Sue case the deceased was killed by a bullet wound in the head. The trial court submitted the two degrees of murder. This court said only first-degree murder should have been submitted, the evidence showing that or nothing. It was held, however, that submission of murder of the second degree was error without prejudice as to the defendant.

There is much in State v. Hoot, supra, that is directly pertinent to the situation before us in the instant case. The charge there, as here, was assault with intent to commit murder; the trial court submitted only that offense, and a conviction followed. The evidence showed, for the State, that the defendant had mailed to his estranged wife an explosive apparatus, an "infernal machine" in the terminology of the times. By good fortune the danger was discovered before harm was done, but the potential of death and destruction was made clear by a terrific explosion which took place under the supervision of officers. We said at page 247 of 120 Iowa, page 567 of 94 N.W.: "It seems to us there is room for but one conclusion. If defendant sent the box intending that it should be opened, he could have but one purpose in view, and that was to murder. If he did not send the box with such intent, he is guilty of no offense." The judgment of conviction was affirmed.

██ An examination of the evidence in the case at bar leads to the conclusion that the defendant was guilty of the offense charged or of no offense. He used a deadly weapon, a .32 calibre rifle, at comparatively close range. Malice and a criminal intent are inferred from the intentional use of a deadly weapon in a deadly manner unless the circumstances in evidence rebut the presumption. State v. Heinz, 223 Iowa 1241, 1259, 275 N.W. 10, 20, 21, 114 A. L. R. 959, and cases cited. We find nothing in the record here which negatives the presumption, except for defendant's denial that he aimed at Denning at all, in which event the injury was accidental and the accused not guilty.

The confession of defendant, properly admitted in evidence, recites: that after procuring the rifle, he drove to the filling

station where Denning was on duty, stopped across the street, saw Denning through the open door, rested the rifle on the door, aimed it at Denning's head, and fired. He said:

"Q. Did you think you could hit the man in the head? A. Yes. Q. How do you account for the fact that you aimed at his head and hit him in the chest? A. I think my rifle throws the bullet down a little. Q. In other words, it shoots low? A. Yes. Q. Is there any doubt in your mind that if your aim was true you would have killed this man? A. No. Q. Were you surprised after you drove away from the station and looked back at the open door to see him come out? A. Yes."

Later in the confession the defendant said he did not know Denning, had no grievance against him, that he had been drinking and fighting with his girl; he was fully aware of what he was doing, but "just didn't care." This fully meets the definition of malice necessary to support a charge of murder or, where the attempted killing fails, as here, of assault with intent to commit murder. It shows a condition of mind and disposition which led to a wrongful act done intentionally without legal justification "and a heart regardless of human life." It is apparent that if Leedom's aim had been true, the result would almost certainly have been the death of Denning. The aim was at Denning's head; it was only through a defective rifle or an erring aim that he was not shot through the head with a .32 bullet. The defendant was surprised to see him able to emerge from the station after the shot. Malice clearly appears; and there is nothing from which a conclusion that a nonfatal assault, rather than the death of Denning, was intended, could be fairly drawn if the jury believed the version given in the confession, as it quite evidently did. There were no eyewitnesses and there was no evidence, other than the confession and the defendant's own testimony, bearing in any material way upon the point under consideration. As a witness for himself, defendant denied that he aimed at Denning. His story on the witness stand was that he merely pointed the gun at the station, does not remember pulling the trigger, and the gun was discharged by accident. If this had been accepted by the jury, it must necessarily have acquitted.

920

The injury to Denning, in the light of this testimony, if it had been believed, was no more than an unfortunate mishap.

The case is clearly within the class of those in which the accused is guilty of the offense charged or not guilty. If we accept, as the jury did, the defendant's attitude as shown by his confession, and Denning had been killed, certainly the defendant would have been guilty of some degree of murder, and there would have been no occasion or justification for the submission of manslaughter or any assaults. Equally, had it been necessary to try him for murder, he would have been guilty neither of the major offense nor any of the claimed included offenses if his story on the witness stand had been believed. We conclude the trial court properly refused to submit included offenses.

III. Error is predicated upon the failure of the court to instruct upon intoxication as it affected the included offenses. The court did instruct upon the defense of intoxication as it pertained to the crime of assault with intent to commit murder, and no complaint is made of this instruction. Since it was not necessary to submit the alleged included offenses, there was no occasion to instruct as to intoxication as it might have affected them. —Affirmed.

All Justices concur.