STATE OF IOWA, appellee, v. HAROLD ERVIN WALKNER, appellant.

No. 49092.

(Reported in 82 N.W.2d 776)

MAY 7, 1957.

Mason & Stone, of Mason City, for appellant.

Norman A. Erbe, Attorney General, Don C. Swanson, Assistant Attorney General, and William Pappas, County Attorney, for appellee.

BLISS, C. J.—Section 712.1 of the 1954 Code of Iowa, which appellant was charged with violating, provides: "If any person buy, receive, or aid in concealing any stolen money, goods, or property the stealing of which is larceny, or property obtained by robbery or burglary, knowing the same to have been so obtained, he shall, when the value of the property so bought, received, or concealed by him exceeds the sum of twenty dollars, be imprisoned in the penitentiary not more than five years, or be fined not exceeding five hundred dollars and imprisoned in the county jail not more than one year; * * *."

It was alleged in defendant's motions for a directed verdict in his favor, and he so contends in this court, that the State wholly failed to establish, by competent evidence, the essential elements of the crime charged. It is his contention that: there is no evidence that he had knowledge, before or at the time he purchased the motor vehicle—a black, five-passenger '49 Mercury Coupé—that it was stolen property; there is no evidence that the motor or the other dismantled parts, identified by the witness, A. M. Peterson, as being parts of said Mercury Coupé, belonging to Sedars Pontiac, Inc., were ever in the defendant-appellant's possession, or concealed by him; and that "there is no independent proof in this record or claimed proof of the establishment of the corpus delicti upon which to base a verdict other than the claimed statements and oral admissions of the defendant, and without more, there isn't sufficient to submit the matter to the jury."

Appellant assigns error because of the rulings in the denial of his motions to direct the jury to return a verdict for him, and in overruling his motion for new trial alleging errors of the court adverse to him in rulings on evidence, and the insufficiency of the evidence to sustain the verdict and judgment.

The assertion of appellant, quoted just above, is based upon his contention that the State has not met the requirements of section 782.7 of the 1954 Code of Iowa, to wit: "Confession of defendant. The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed."

In addition to this Code section, and in support of his

motions, appellant cites the following authorities: 22 C. J. S., Criminal Law, section 730b, page 1248; 23 C. J. S., Criminal Law, section 916b, page 182; State v. Chanen, 209 Iowa 784, 229 N.W. 143; State v. Norman, 190 Iowa 472, 180 N.W. 151; State v. Thomsen, 204 Iowa 1160, 216 N.W. 616; State v. Cook, 188 Iowa 655, 176 N.W. 674; and People v. Davis, 358 Ill. 617, 193 N.E. 535.

The controlling factors in the determination of this appeal are the facts and we therefore set out the testimony with more than customary detail.

The first witness called by the State was A. M. Peterson. He testified that he had been in the business of buying and selling automobiles since 1945, and for four years preceding the trial he was the sales manager for the Sedars Pontiac Company, whose place of business was at Sixth and North Federal Avenue in Mason City. He was so employed on Saturday, March 3, 1956. On that day his employer owned a 1949 black five-passenger '49 Mercury Coupé. At closing time on that day he parked the car in front of a house just west of his employer's place of business and put the car key in a box in the garage where all car keys were kept. On Monday, March 5, 1956, when he came to work he could not find the car where he had parked it nor in the garage. The key to the Mercury was in the box where he had placed it, but the Mercury was gone. It had been taken without his or his employer's permission. At the police station in Mason City he found two front fenders, the dash, the two doors, half a windshield and the engine, together with the hood, all of which he identified positively as belonging to the Mercury which he had parked on March 3. He tried the ignition key of the Mercury and it worked perfectly in the engine. He also compared a piece of material, which his company had, with the material on the armrest of the car (of one of the parts at the police station) and they matched perfectly. He did not find any serial number on the motor or engine. The Mercury owned by the Sedars Company had a serial number on the title. The witness testified that the '49 Mercury Coupé was worth between $350 and $395.

The next witness for the State was a 21-year-old unemployed young man named Jack Harriott. After identifying himself and giving his residence at Mason City, he was asked:

"Q. Now, Mr. Harriott, I would like to ask you if you know or are acquainted with Harold Walkner? A. I seen him a few times. Q. Do you know where he lives? A. I refuse to answer on the ground it may incriminate me."

The court sustained his claim of privilege. His attorney appeared with Harriott.

Jerry Stoltenberg, called by the State, testified that: he was 19 years old and lived in Mason City with his parents; he and the defendant were in the auto salvage business at defendant's home on an acreage outside the city limits of Rockwell, in which business they bought cars unfit for operating, and dismantled them completely, saving what parts were of value and cutting up the rest for junk; he was in that business with the defendant in February and March 1956; shared the profit and losses fifty per cent each.

"Q. Now, then on Sunday morning, March 4, 1956, did you go to the Walkner (defendant) acreage there where you carried on this business with Harold Walkner? A. Yes. Q. And what was Harold Walkner doing when you got there? A. I refuse to answer on the grounds it might incriminate me."

His claim of privilege to not answer was sustained by the court. There was no cross-examination of Mr. Stoltenberg.

Joseph Madden, a detective of the Mason City Police Department for several years, testified for the State, in substance, that: on March 5, 1956, he contacted the defendant at his home on the edge of Rockwell in Cerro Gordo County and asked him about a 1949 Mercury that had been left at his place, and defendant told him that a person whose name was Lindsay, he thought, had brought a 1949 Mercury to his place on Sunday (March 4, 1956) and tried to sell it to him for $150, and defendant said he told the man he would not give him over $50 for it, and they could not agree on the price. The witness testified he talked to the defendant in the early morning of March 6 (Tuesday) at the Mason City Police Station. The witness (Madden) said the

conversation was about the same as on his previous interview except that Jack Harriott was at the station, and defendant identified him as the person who had driven the 1949 Mercury to his place on the Sunday previous and tried to sell it to him, and then left with the automobile. Again in the evening of that same day (Tuesday March 6) witness Madden interviewed the defendant. Of this conversation Madden testified:

"I talked with him alone for some time, and then later Detective Stephens (also of the Mason City Police Department) came in. The conversation at that time was that I told Walkner that he had put me to a lot of work in finding the parts of this 1949 Mercury, and he asked me where I found them. I told him that we found the motor of this Mercury at a Mr. Stoltenberg's home, which is located at Twenty-ninth Street Southwest (Mason City, Iowa). And I said you knew where that was because you helped put it out there, and he said that was right, that Mr. Stoltenberg took it out there on a Sunday afternoon. I told him we located the rest. He asked me where we located the body of the car, that was cut up. I told him that it was east of Rockwell, and the defendant told me that after I and Detective Stephens had left, the previous night at his home at Rockwell, that he helped Mr. Stoltenberg load up the various parts of this '49 Mercury and that they hauled it in Mr. Stoltenberg's pickup, and that he (Mr. Walkner) had to go to work so Stoltenberg took parts of the car in his pickup away from the farm. I also asked him at the time he gave Harriott the money at his home if he knew the car was stolen and at that time he said he felt it was stolen when he paid Mr. Harriott. This all occurred before Detective Stephens came in that evening. There was probably further conversation before Stephens came in that evening but I don't recall it. When Detective Stephens was there, I asked Mr. Walkner if he knew the car was stolen when he paid Jack Harriott the $60, and he said yes. He said he paid him $50 and Mr. Stoltenberg gave him $10 and that made a total of $60. He also said that this deal was made by Stoltenberg with Harriott to get him a motor for his '49 Mercury, but that he would take the blame for it. He told me he gave Harriott $60 but $10 he got from Mr. Stoltenberg that morning,

Sunday morning. He told me and Detective Stephens and Mr. Stoltenberg that Mr. Stoltenberg cut up this car on a Sunday, that would be March 4th. In response to a question as to what they did with the motor Walkner said that they took the motor that Sunday afternoon to Mr. Stoltenberg's home which is located in Mason City. When I and Detective Stephens were discussing this car Walkner did say that he was quite nervous about handling the car, but that he felt that being in the junk business and with as many automobiles around, that he could cut up one and nobody would notice it too much. He was surprised that we got on to the car as fast as we did. He was wondering how we got information so soon. There were several cars in this so-called junk yard, most of them had been dismantled or partly dismantled. He told me he dismantled that car. He said he and Mr. Stoltenberg cut this car up on a Sunday. I never showed Mr. Walkner the parts of the Mercury that were at the police station."

On cross-examination Mr. Madden testified:

"I took a written statement from the defendant, in fact there were two statements taken, Captain McClintock took another statement later, after that one was taken. Stephens and I went to Walkner's home Monday night (March 5) and had a conversation with Harold Walkner. He did not tell me in that conversation that he knew or felt that this car was stolen at that time. Walkner told me in the first conversation on Tuesday evening that he felt that the car was stolen. I don't recall him telling me that after I and Stephens had been to his home on Monday night that he then began to wonder what was wrong with the car. In the conversation on the early morning of Tuesday, that would be March 6, when we took that statement, Walkner had not admitted to us any knowledge of buying this automobile. In the conversation at his home on Monday night at no time did he tell me that he knew the car was stolen.

"Exhibit 1 is the only written statement that I took from the defendant, it was taken about 12:30 a.m. Tuesday morning."

The witness, being asked to read the statement taken, read as follows:

" 'Statement of Harold Ervin Walkner, Mason City, Iowa, Cerro Gordo County, March 6, 1956, 12:30 a.m., in the squad room.

" 'I, Harold Ervin Walkner, make the following statement voluntarily and without promise or threat of any kind. I have been told that any statement I make can be used for or against me in court. I am willing to make this statement of facts because I wish to tell the truth. I make this statement to Detective Joseph Madden, Captain Newburg, Deputy Sheriff Duane May-field. My name is Harold Ervin Walkner. I live at Rockwell, Iowa. I was born at Renwick, Iowa, January 14, 1914. On Sunday, March 4, 1956, I was out in my barn letting out my cattle when Jack Harriott rode into the yard in a black pickup truck driven by somebody else. He came out of the—he came out back of the barn where I was and offered to sell me this car. Excuse me, I jumped a line there. Offered to sell me a dark colored '49 Mercury. I looked the car over thinking maybe I would buy the car. I told him I wouldn't give him over $50 for this car as the right front fender was in bad shape. He stated it had a broken frame on the car and drove hard. He stated he wanted $150 for it and wouldn't take any less. He said he was going to take the car to Albert Lea, Minnesota, to get some motorcycle parts. I felt when he was talking to me that something was wrong with the car.

" 'I read the foregoing statement and it is true to the best of my knowledge and memory.

"Signed   Harold Walkner, witnesses, Duane Mayfield, J. H. Madden, and M. S. Newburg.' "

On redirect examination witness Madden testified: "The statements that I have testified that Mr. Walkner made on Tuesday evening were made after Exhibit 1 was given at about 12:30 a.m. Tuesday morning, and after the statement was signed."

Max Stephens, testifying for the State, stated that: he was a member of the Mason City police force for about ten years and was then, and had been for approximately ten years, a detective on that force; on Tuesday evening, March 6, he and Detective Madden informed the defendant that they had recovered the Mercury car, and defendant was amazed at how they had found

out about this car as he said he was in the junking business and it was usual for him to cut up cars and take the parts to Mason City, and he "didn't think anybody would find out about it"; Walkner said that there had been a previous deal made and that Jerry Stoltenberg had seen Harriott the week previous and would offer him $10 more if he could get this particular car due to the fact that the motor was gone from his and he needed a new motor. The witness, in a further conversation with defendant, testified that the latter said he and Stoltenberg had dismantled and cut up the Mercury and had taken the motor to Stoltenberg's home, and that on Monday evening, (March 5) after he (Stephens) and Madden and Deputy Sheriff Mayfield had been to defendant's place, that they (he and Stoltenberg) went out and loaded the remaining parts of "this '49 Mercury into Stoltenberg's pickup truck and Stoltenberg took it some place and disposed of it, and he, Walkner, came to Mason City to work and did know the car was stolen." The witness did not recall that there was any conversation with defendant as to when he knew the car was stolen.

There was no cross-examination of Mr. Stephens, and at the conclusion of his testimony defendant offered no evidence, but rested, and renewed his motion for a directed verdict.

I. The only brief point in appellant's brief and argument is the following statement: "At the close of all the evidence there was no competent proof or any independent evidence that the crime of receiving stolen goods was committed by any person and this defect cannot be supplied by the claimed extrajudicial admissions of the accused."

These extrajudicial admissions of appellant, constituting, in effect, a confession, were freely and voluntarily made. They were sufficient, without other evidence, to connect him with the crime charged. State v. Icenbice, 126 Iowa 16, 20, 101 N.W. 273; State v. Leedom, 247 Iowa 911, 76 N.W.2d 773.

Appellant argues that the only evidence of the crime charged were the purported admissions he made as testified by the witnesses, Mr. Madden and Mr. Stephens, and that this evidence alone was not sufficient to sustain his conviction. It is his contention that there was no "other proof that the offense was committed" as required by Code section 782.7.

■ We agree with the appellant that such "other proof" was necessary to sustain his conviction, but we disagree with his contention that the State failed to produce it. It clearly appears in the record that when the detectives, Madden and Stephens, began their investigation, and before they contacted the appellant, they went to the Jerry Stoltenberg home, and there they found the motor or engine of the '49 Mercury. Later, in their further search for other parts of the dismantled car, they found them thrown away in the open country outside the city of Rockwell. They removed the engine and other remnants to the police station in Mason City. When they told the appellant of their discoveries he was "nervous" and "surprised" and "amazed" and asked them how they found the parts so quickly. Their discoveries were not from any information, admissions or confession received from appellant, but independent thereof. It was definitely such "other proof" as was required by Code section 782.7. The appellant was in the so-called junk business, dismantling motor vehicles no longer usable and salvaging the parts at his place of business, yet he removed therefrom the remnants of this Mercury Coupé and concealed them elsewhere. This evidence tended to support the charge in the indictment and was rightly admitted by the court. It not only supplemented the admissions of appellant, but it also was confirmatory of them.

■ In State v. Leedom, supra, the court said at page 915 of 247 Iowa: "But it is not necessary that the 'other proof' required by section 782.7, supra, do more than show that the offense was committed by someone." Citing State v. Saltzman, 241 Iowa 1373, 1378, 44 N.W.2d 24, 26, 27; State v. Webb, 239 Iowa 693, 702, 31 N.W.2d 337, 342. In the Saltzman case, supra, we said: "This other evidence need not of itself, and independent of the confession, be sufficient to prove the commission of the crime beyond a reasonable doubt. It is sufficient if when considered with the confession it establishes beyond a reasonable doubt that the crime was in fact committed by someone."

In State v. Webb, 239 Iowa 693, 703, 31 N.W.2d 337, quoted in State v. Saltzman, supra, 241 Iowa 1378, 1379, it is stated: "The required 'other proof' is perhaps not strictly corroborative but rather supplemental. The language of the statute is some-

what significant. It does not mention 'corroboration' but says 'unless *accompanied with* [*by*] other proof' * * * that *someone* is guilty." See also State v. Gorman, 168 Iowa 216, 220, 150 N.W. 9; State v. Kelley, 193 Iowa 62, 66, 186 N.W. 834; State v. Baker, 246 Iowa 215, 233, 66 N.W.2d 303.

It was for the jury to weigh the evidence of the admissions of appellant, and the "other proof." The court did not err in denying defendant's motion to direct a verdict.

The judgment is—Affirmed.

All JUSTICES concur.