**STATE of Iowa, Appellee,**

v.

**Kenneth Paul DUNN, Appellant.**

No. 54935.

Supreme Court of Iowa.

June 29, 1972.

Dennis D. Damsgaard, of Christoffersen & Damsgaard, Cedar Falls, for appellant.

Richard C. Turner, Atty. Gen., Allen J. Lukehart, Asst. Atty. Gen., and David J. Dutton, County Atty., for appellee.

RAWLINGS, Justice.

Defendant, Kenneth Paul Dunn, was charged with arson of personal property, tried, convicted and sentenced. He appeals. We reverse.

The case before us for review is of such nature as to necessitate a prefatory statement of substantive facts disclosed by the record.

Absent any evidence introduced by defendant we are confined to testimony elicited from State's witnesses.

Arnold C. Marsh, investigating deputy sheriff, Black Hawk County, went to Holman woods October 12, 1970, and there found an almost completely burned white 1970 Ford LTD. A license plate, found about 12 feet away, bore what appeared to be # 38–2095. In the presence of detective Morelock, this witness talked with defendant who stated he took the car and burned it, having been hired and partially paid by Glen Rogers (owner) to do so, and that Ronnie Holman had accompanied him.

Fellow deputy Carl Perigo joined Marsh, October 12th, at the Holman woods burned car scene. They returned the next day and there located another license plate bearing # 38–2085.

September 28, 1970, Leland Baruth, Waterloo police dispatcher, received a call from Glen Rogers reporting his 1970 white Ford LTD was missing.

Patrolman Steven Dwyer went, at once, to Crossroads Shopping Center and there contacted Rogers in Penney's parking lot.

Paul F. Bettenga, county treasurer, testified his records, copies thereof being identified, disclosed the title certificate to a 1970 white Ford LTD, with given vehicle number, had been issued on application of Glen Clarence Rogers, with license plates # 38-2085.

Other witnesses testified the burned car was towed in by Callies', but no identification numbers were found on it.

Glen Rogers stated, on September 28, 1970, he owned a white, black vinyl top, 1970 Ford LTD, then insured by Hawkeye Security Insurance Company. He knew Dunn, but denied any agreement with him to take and dispose of the car. Rogers said he had seen the white Ford LTD once since September 28th, at a distance, then said a car at Callies' "didn't look like mine, if it was mine."

Dale M. Thompson, Hawkeye Security Insurance Company representative, stated his employer had issued coverage on Rogers' 1970 Ford. Over incompetent, irrelevant, and at times hearsay or not the best evidence objections, this witness also repeated statements allegedly made to him by Rogers on October 14, 1970. These answers were permitted on the apparent theory that if a conspiracy be established as between Dunn and Rogers, then any hearsay statements made to Thompson by Rogers would be admissible.

October 12, 1970, David R. Nagle, assistant county attorney, questioned Dunn, who then stated he, by prearrangement with Rogers, picked up the latter's car "at Penney's at the Crossroads", took it to Holman woods and there set fire to the vehicle. Rogers was to collect insurance on his car

and agreed to pay Dunn $500 of which $135 had been received. Later the same evening, in the presence of Nagle, Marsh, Morelock and Rogers, defendant repeated his statement to Nagle but then claimed Rogers had agreed to pay $300.

Ronnie Dean Holman, 17, testified in return for a controversial promise of immunity by the county attorney and Rogers' insurance carrier. This witness was riding with defendant September 28, 1970. They went to Crossroads Shopping Center. There Holman was told by Dunn he had an arrangement with Glen C. Rogers to pick up his automobile for which Dunn was to be paid $500. Defendant then stated he was taking Rogers' car to Holman woods. About an hour later Holman went there, saw defendant pour gas on the inside of a 1970 white Ford LTD and set fire to it. They then left.

Defendant here contends trial court erred in overruling his motions (1) for a directed verdict, (2) in arrest of judgment, (3) for a new trial.

■ I. In support of his first assignment defendant urges, the state failed to prove he (a) set fire to or burned a car owned by Rogers, (b) willfully and maliciously set fire to or burned Rogers' automobile.

These claims will be separately considered.

With regard to sufficiency of evidence as to ownership and burning of the car, we view all testimony in that light most favorable to the State, accepting as established all reasonable inferences tending to support the fact finder's (usually jury's) action. Only the supporting evidence is considered, even if contradicted. It is for the fact finder, not us, to determine credibility of witnesses and decide questions of fact. A finding of guilt is binding on this court unless without substantial support in the record. E. g., State v. Hackett, 197 N.W. 2d 569 (Iowa) (opinion filed May 11, 1972); State v. Jennings, 195 N.W.2d 351,

357 (Iowa); State v. Beer, 193 N.W.2d 530, 531 (Iowa).

Also, "In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge.

"Either direct or circumstantial evidence, or both, on each and every essential element to conviction is sufficient to warrant a finding of guilty, if it satisfies triers of facts beyond a reasonable doubt. For this purpose circumstantial evidence may be equal in value to and sometimes more reliable than direct evidence. However, where circumstantial evidence alone is relied on as to any one or more of essential elements the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged." State v. Johnson, 196 N.W.2d 563, 566.

Mindful of the foregoing we look again to the factual situation. In brief it discloses Rogers owned a 1970 white Ford LTD; taken by defendant from Penney's parking lot at Crossroads Shopping Center, Waterloo; it was removed to Holman woods and set on fire; later there found, almost entirely burned, with the two front wheels missing; a license plate, #38–2085 issued to Rogers, was next day found near the car burning scene.

Viewed most favorably to the State, this clearly sufficed to create a jury issue regarding both ownership and burning of the Ford automobile.

II. Even so, defendant contends the State did not prove he "willfully and maliciously" set fire to and burned Rogers' automobile.

In material part The Code 1971, Section 707.3, under which defendant was charged, provides:

"Any person who willfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any * * * car, * * * automobile or other motor vehicle; * * * being the property of another person, shall, upon conviction thereof, be sentenced to the penitentiary for not more than three years, or be fined not to exceed one thousand dollars."

In support of his instant position defendant argues:

"A reading of the entire record will fail to show any direct evidence, or any circumstantial evidence, from which an inference could be drawn that there was any ill will or malice on the part of Dunn towards Rogers."

■ In taking this position defendant erroneously assumes the State was instantly required to prove burning of the car stemmed from personal hostility or revenge on the part of Dunn towards Rogers.

As here employed "willfully" means purposely, deliberately, intentionally. See State v. Wallace, 259 Iowa 765, 773, 145 N.W.2d 615; State v. Shipley, 259 Iowa 952, 957, 146 N.W.2d 266; 1 Underhill's Criminal Evidence, § 54 (5th ed.); Black's Law Dictionary, "Willful", page 1773 (rev. 4th ed.). See also State v. True, 190 N.W.2d 405, 406–407 (Iowa).

■ And the word "maliciously", when used in a legislative enactment pertaining to the crime of arson, denotes that malice which characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; that state of mind which actuates conduct injurious to others without lawful reason, cause or excuse. See Commonwealth v. Lamothe, 343 Mass. 417, 179 N.E.2d 245, 246–247; Black's Law

Dictionary, "Maliciously", "Maliciousness", page 1111 (rev. 4th ed.); cf. People v. Denno, 13 Misc.2d 177, 175 N.Y.S.2d 643, 645.

■ Furthermore, the intentional doing of a "wrongful act", without justification or lawful excuse, will permit an inference of a wicked state of mind, i.e., legal malice, as opposed to actual malice. See Claude v. Weaver Construction Company, 261 Iowa 1225, 1230–1232, 158 N.W.2d 139; Commonwealth v. Lamothe, *supra*; cf. State v. Jiles, 258 Iowa 1324, 1333–1336, 142 N.W.2d 451.

■ So in this case, although the evidence is in some respects conflicting, the jury could and apparently did conclude, from the willful and unlawful burning of Rogers' car the element of malice, as here involved, was fairly implied.

III. It is next urged, "corroboration" is lacking as to (1) Dunn's statement he had burned Rogers' Ford, and (2) Holman's testimony to the effect he saw Dunn set fire to it. We shall consider only the first of these contentions.

■ Both parties hereto apparently take differing positions regarding the status of Dunn's after-the-act incriminatory statements to Marsh and Morelock, later to them and Nagle. The conflict is as to whether they are confessions or admissions. See State v. Olson, 260 Iowa 311, 318–319, 149 N.W.2d 132.

The State asserts these declarations must be labeled confessions and we agree: Dunn admitted he took Rogers' car to Holman woods and there set fire to it. Absent other required statutory or common law proof this would suffice to support a guilty verdict. See State v. Webb, 239 Iowa 693, 699–700, 31 N.W.2d 337.

■ But other proof is statutorily required to sustain a conviction. Code § 782.7 provides: "The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompa-

nied with other proof that the offense was committed."

What then is the nature of supplemental proof so required? In the first place, as was said in State v. Webb, 239 Iowa at 701, 31 N.W.2d at 341:

"There is no suggestion in the statute that the 'other proof' must be sufficient to establish defendant's guilt 'beyond a reasonable doubt,' or even that it must tend to prove his connection with the commission of the alleged crime. In fact, the language of the statute requires other proof of the *corpus delicti* rather than of defendant's connection with the commission of the alleged crime. (Authorities cited)."

Defining *"corpus delicti"* in State v. Millmeier, 102 Iowa 692, 698, 72 N.W. 275, 277, this court stated:

"The expression means, primarily, the 'body of the offense.' But, in applying it, courts and text writers have not at all times agreed as to what is meant by the 'body of the offense.' In our opinion, the term means, when applied to any particular offense, that the particular crime charged has actually been committed by some one. It is made up of two elements: *First*, that a certain result has been produced, as that a man has died, or a building has been burned, or a piece of property is not in the owner's possession; *second*, that some one is criminally responsible for the result."

See also 3 Underhill's Criminal Evidence, § 711 (5th ed.); Annot. 45 A.L.R.2d 1316, 1327–1330.

■ Despite some sharply fractionated views on the subject, the foregoing appears to be the more realistic and generally accepted definition of the term and we adhere to it. See 7 Wigmore on Evidence, § 2072, n. 4 (3rd ed.); McCormick on Evidence, § 110, pages 230–231.

■ Furthermore, the other evidence need not *per se*, and independent of a con-

fession, be sufficient to prove commission of the crime charged beyond a reasonable doubt. It will suffice if, when considered with the confession, it establishes beyond a reasonable doubt the offense was committed by someone. See State v. Walkner, 248 Iowa 920, 928–930, 82 N.W.2d 776; 2 Underhill's Criminal Evidence, § 381, at page 957 (5th ed.); 23 C.J.S. Criminal Law § 839.

■ We refer now to some other instantly pertinent guiding precepts.

"The *corpus delicti* may be proved with other elements of the offense, by circumstantial evidence." Curtis, Law of Arson, § 486, pages 528–529. See State v. Saltzman, 241 Iowa 1373, 1377, 44 N.W.2d 24; State v. Whisler, 231 Iowa 1216, 1219–1220, 3 N.W.2d 525.

"The facts which are presented to show the responsibility of the defendant may aid in establishing the *corpus delicti*." Curtis, Law of Arson, § 486, page 532. See People v. Mowry, 6 Ill.2d 132, 126 N.E.2d 683, 686.

And, " * * * the mere possibility that the fire was occasioned by spontaneous combustion or by some other cause innocent of criminal intent, does not demand an acquittal, for the jury must act on probabilities, not possibilities." Curtis, Law of Arson, § 486, page 533. See State v. Kitowski, 44 Wis.2d 259, 170 N.W.2d 703, 706.

■ It is to us apparent the car burning evidence in this case is such as to permit a finding by the jury that the fire was of an incendiary nature.

In other words, Rogers' 1970 white Ford LTD was unexpectedly found in a remote wooded area where it would not normally be, burned almost beyond identification, with the two front wheels missing. This was sufficient to establish the other proof required by Code § 782.7.

In light of the foregoing, we neither reach the question nor determine whether Ronnie Holman's testimony did or did not qualify as corroboration of Dunn's confession. See, however, Code § 782.5; State v. Jennings, 195 N.W.2d 351, 356–357 (Iowa); State v. True, 190 N.W.2d 405, 407 (Iowa); State v. Theodore, 260 Iowa 1038, 1040–1041, 150 N.W.2d 612; 21 Drake L.Rev. 331, 335.

Neither is it essential that the questioned grant of immunity to Holman by the county attorney and Rogers' insurance carrier be here considered. See, however, Code §§ 622.14–622.16; 8 Wigmore on Evidence, §§ 2281–2284 (McNaughton rev.); 1 Underhill's Criminal Evidence, § 180 (5th ed.); 21 Am.Jur.2d, Criminal Law, §§ 148, 150, 152–153; 98 C.J.S. Witnesses § 439; 21 Drake L.Rev. 331, 335. See also Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; State v. O'Meara, 190 Iowa 613, 624, 177 N.W. 563.

Trial court did not err in overruling defendant's motion for directed verdict, as made.

IV. In accord with Iowa R.Civ.P. 196 counsel was allowed to and did make a record on proposed jury instructions.

By instruction 11 the jury was told:

"In your consideration of the testimony of the witness, Dale M. Thompson, particularly his testimony relating to a conversation which he stated he had with Glen C. Rogers on October 14, 1970, you are instructed that if you find by the evidence beyond a reasonable doubt that a conspiracy existed between the defendant, Kenneth Paul Dunn, and Glen C. Rogers for the commission of the offense of which the defendant has been accused, then you may consider the testimony of Dale M. Thompson relating to the conversation which he stated he had with Glen C. Rogers on October 14, 1970, and particularly his testimony relating to statements made to him by Glen C. Rogers on that date as you would consider any other evidence in this case. However, if you do not find by the evi-

dence beyond a reasonable doubt that such a conspiracy existed, then you should not consider the testimony of Dale M. Thompson relating to the conversation which he stated he had with Glen C. Rogers on October 14, 1970, for any purpose in this case." [There followed a definition of conspiracy.]

To this counsel for Dunn entered these timely objections: Defendant is not charged with conspiracy, a separate and distinct crime; the instruction is confusing and misleading; by it the jury could conceivably convict for conspiracy rather than the offense charged; proof of conspiracy would not establish a willful and malicious burning of Rogers' car; and the instruction is prejudicial to accused. This last ground was augmented by a deprivation of fair trial allegation in defendant's new trial motion.

■■■ These objections leave much to be desired. See generally State v. Hraha, 193 N.W.2d 484, 486 (Iowa); State v. Brandt, 182 N.W.2d 916, 918 (Iowa); State v. Thompson, 254 Iowa 331, 338, 117 N.W.2d 514; State v. Strum, 184 Iowa 1165, 1177, 169 N.W. 373.

But under existing circumstances they are deemed to suffice. See generally State v. Horrell, 260 Iowa 945, 954, 151 N.W.2d 526; State v. Hochmuth, 256 Iowa 442, 448, 127 N.W.2d 658; State v. Baratta, 242 Iowa 1308, 1319, 49 N.W.2d 866; State v. Wilson, 234 Iowa 60, 85–91, 11 N.W.2d 737; 23A C.J.S. Criminal Law §§ 1306–1307; cf. Bruton v. United States, 391 U.

S. 123, 135–137, 88 S.Ct. 1620, 1627–1628, 20 L.Ed.2d 476.

■■■ We are satisfied the questioned instruction was erroneously given in that it compounded the confusion resulting from extended introduction of prosecutorial evidence regarding collateral issues and separate offenses,[1] possibly stemming in part from absence, at times, of sufficiently specific testimonial objections;[2] it improperly allowed the jury to inceptionally determine whether or not there was sufficient evidence of a conspiracy, apart from statements by Rogers to Thompson, to justify a consideration of those statements in determining whether defendant was guilty of the offense charged;[3] in effect the jury was thereby wrongfully allowed to pass under admissibility of evidence after the court had permitted its introduction.[4]

Finally, an examination of the whole record discloses Dunn was not afforded a fair trial. See Code § 793.18; State v. Rankin, 181 N.W.2d 169, 171 (Iowa); State v. McCarty, 179 N.W.2d 548, 552–553 (Iowa); State v. Horrell, 260 Iowa 945, 954, 151 N.W.2d 526; State v. Leahy, 243 Iowa 959, 969, 54 N.W.2d 447; State v. Walker, n. 3, *supra*.

This case must therefore be reversed and remanded with instructions that defendant be granted a new trial.

Reversed and remanded with instructions.

All Justices concur.

---

1. See Code §§ 719.1, 707.4; State v. Wright, 191 N.W.2d 638, 639–642 (Iowa). Compare State v. Hopkins, 192 N.W.2d 747, 748–752 (Iowa).

2. See State v. Davis, 196 N.W.2d 885, 894 (Iowa); State v. Evans, 193 N.W.2d 515, 518 (Iowa); State v. Grady, 183 N.W.2d 707, 719 (Iowa); State v. Entsminger, 160 N.W.2d 480, 482–483 (Iowa); State v. Davis, 261 Iowa 1351, 1356, 157 N.W.2d 907; State v. Hodge, 252 Iowa 449, 462, 105 N.W.2d 613.

3. See State v. Walker, 124 Iowa 414, 417–423, 100 N.W. 354. See also State v. Gilmore, 151 Iowa 618, 623–625, 132 N.W. 53; 3 Underhill's Criminal Evidence, §§ 863–865 (5th ed.). See generally State v. Thompson, 273 Minn. 1, 139 N.W.2d 490, 503.

4. See State v. Hollingshead, 191 N.W.2d 680, 682; 9 Wigmore on Evidence, § 2550 (3rd ed.); cf. State v. Walker, *supra*.