**STATE of Iowa, Appellee,**

v.

**Richard J. JONES, Appellant.**

**No. 62137.**

Supreme Court of Iowa.

June 27, 1979.

Rehearing Denied July 20, 1979.

Morris C. Hurd of Hurd & Donahue and Daniel D. Williamson, Ida Grove, for appellant.

Thomas J. Miller, Atty. Gen., and Faison T. Sessoms, Jr., Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, McGIVERIN and LARSON, JJ.

LARSON, Justice.

This defendant appeals from a conviction of attempting to break and enter in violation of § 708.10, The Code 1977, claiming that (1) the trial court was without authority to hold court outside the courthouse and by so doing denied him his right to a public trial; (2) he was denied his right to speedy trial under § 795.2, The Code 1977; and (3) his motion for directed verdict based upon alleged insufficiency of the evidence was

erroneously overruled. We affirm the trial court.

I. *Site of trial.* On July 20, 1977, the state fire marshall informed the board of supervisors of Ida County that the courthouse there was unsafe. The board was advised that unless the building was brought up to code standards it would have to be vacated. On October 31, 1977, it was agreed that if the top floor of the building, which included the district court, was vacated, the remaining areas could remain open. Thereafter, James P. Kelley, Chief Judge of the judicial district, designated a room in the basement of the Ida Grove post office as the temporary courtroom.

The room in question is 16 by 30 feet in size. A diagram of it is attached. Defendant objected to holding the proceedings in that room, commencing with his written objections filed on the date of his arraignment and at later stages of the proceedings. These objections were, in substance, that the room lacked adequate size to accommodate court personnel, litigants, veniremen and the general public, that it lacked windows and proper ventilation, lacked proper dignity and "decorum" and was itself a fire hazard because it had only one access door. The trial court overruled defendant's objections.

Two separate issues are raised by defendant in objecting to the place of trial. First, did the court have authority to hold court outside of the courthouse? Second, did holding the trial in such a small room deprive defendant of his right to a public trial under United States Constitution amendment VI and Iowa Constitution, article I, section 10? The State contends the defendant failed to introduce any evidence (other than a diagram which was attached to his written objection) to support his claim of inadequacy of the substitute courtroom and therefore failed to establish the factual basis for his objections. However, the facts concerning the physical layout of the room, and the events leading up to its designation by the chief judge, have not been disputed by the State. We conclude, for the reasons following, that the defendant is not entitled to a reversal on these grounds.

Section 602.5, The Code 1977, provided:

Courts must be held at the places in each county, as designated by the chief judge of the judicial district, except for the determination of actions, special proceedings, and other matters not requiring a jury, when they may be held at some other place in the district with the consent of the parties.

Section 602.5 replaced an earlier statute, section 604.9, The Code 1971, which had provided that:

Courts must be held *at the places provided by law*, except for the determination of actions, special proceedings, and other matters not requiring a jury, when they may, by consent of the parties therein, be held at some other place. (Emphasis added.)

Defendant contends the "place provided by law" is the courthouse, that this is the gist of present § 602.5 despite its lack of such language, and that if a courthouse is in existence in a county, trials must be held there; only if there is no courthouse are the board of supervisors and district court authorized to designate a different place for trials. *See* § 602.6, The Code. He argues that the chief judge, under the new provision giving him authority to designate places for trial, still did not have discretion to hold them "wherever his whim and fancy might direct."

We need not, however, determine the perimeters of the chief judge's discretion under § 602.5 to designate a place of trial, nor whether he has any authority under it to designate another place for trial when a useable courthouse is available.

■ Despite defendant's contentions that the courthouse was in existence and even that it had a "fine and suitable courtroom," the facts were that it was deemed to be a fire hazard and that use of the courtroom area had, in effect, been forbidden. An order by the fire marshall vacating the en-

tire courthouse was avoided only by an agreement by which the top floor would not be used. For the purpose of holding trials, Ida County did not have an available courthouse at the time of the trial in this case. Section 602.6, The Code, provides:

When there is no courthouse at the place where the courts are to be held, its sessions shall be at such suitable place as the board of supervisors provides, but if no such place is provided, the court may direct the sheriff to procure one at the expense of the county.

The board did designate another place to hold the trial, and the chief judge, for the court, implemented it by his order. We find authority for these actions to be adequately provided by statute. Cases cited by the appellant on this point are distinguishable. *Funk v. Carroll County,* 96 Iowa 158, 64 N.W. 768 (1895), for example, held it improper to take the testimony of a witness in the evening in a private home rather than in the courthouse. However, there was a usable courthouse available; the testimony was taken in the home only to accommodate a witness who was ill. We said that:

In a county *where there is a regular courthouse provided and used* for the holding of courts, unless by consent of the parties, the court has no authority to adjourn the court to a private house for the purpose of a trial; and if done, the court, so sitting is without jurisdiction. (Emphasis added.)

96 Iowa at 159, 64 N.W. at 768. *Roberts v. State,* 100 Neb. 199, 158 N.W. 930 (1916) is also distinguishable. That case held that holding a trial in a local theatre when a usable courthouse was available was error when done only to accommodate a larger crowd.

Facts similar to those in the present case were considered in the early case of *State v. Shelledy,* 8 Iowa 477 (1859). There the defendant claimed as error that an indictment was returned against him while the court was sitting at the "university build-ing" in Iowa City, although there was a courthouse in existence in Johnson county. The courthouse, however, was in "a somewhat ruined and dilapidated condition." Court was first convened at the courthouse, then because of its condition was adjourned to the university building. In holding this to be proper, we said that:

All courts must sit at the places designated for that purpose pursuant to statute, unless, by common consent, some other place is fixed upon. [Citation.] Where the county is not provided with a regular court-house and if no suitable place be provided by the county court, the district court may direct the sheriff to procure one. [Citation.]

We think the record shows enough to justify this court in assuming, that the court-house, owing to its ruined and dilapidated condition, was an improper place for holding court; and the county court provided, for the use of the court the University building, or failing to provide any place, the said building was provided by the sheriff for the use of the court.

*Id.,* at 509–10. We conclude that under the circumstances of this case the chief judge acted properly in designating a place other than the courthouse for this trial.

Defendant claims that, even if the court had authority to designate some alternate place to hold trial, the one actually selected was so lacking in physical capacity, function, and decorum as to effectively deprive him of his right to public trial. While this "courtroom" is not likely to be proposed in the future as a model by courthouse consultants, we do not find, on the other hand, that it was so grossly inadequate in size to deny public access or so lacking in proper decorum as to vitiate the proceedings. In such circumstances as these, the trial court must be given some latitude in the exercise of its discretion. We cannot presume under these facts that the district court, by its order, set up quarters for itself so grossly inadequate in design, function,

and decorum as to pervert the proceedings held there. Nor are we able to make such a factual finding because no specific evidence is furnished upon which such a finding could be made.

■ Furthermore, while we recognize that a public trial might in some cases be as effectively denied in an area incapable of accommodating public spectators as in a "star chamber" proceeding, this was not shown to have been the intent or effect of this court's action in designating this alternative place for trial. No one was shown to have been denied access, and defendant's own diagram attached to this opinion shows some spectator areas, although concededly limited. The test in such case is not whether the courtroom is large enough to seat everyone who wants to attend, but whether the public has freedom of access to it. *See, Caudill v. Peyton*, 209 Va. 405, 164 S.E.2d 674, 676 (1978); *Via v. Peyton*, 284 F.Supp. 961, 964 (D.C.Va.1968).

We conclude that use of this "courtroom" did not deny defendant his constitutional right to a public trial.

II. *Right to speedy trial.* Defendant contends he was not brought to trial in time to avoid dismissal of the case under § 795.2, The Code. That section provides, in part, that:

If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown.

Defendant was charged by county attorney's information on December 21, 1977. On March 20, 1978, he entered a plea of not guilty. The court noted that defendant had waived his right to speedy trial "up to the date of May 9, 1978." The actual date defendant waived his right is not shown, nor is it in issue here. It apparently was prior to March 20, however, because by that time the 60 days had already expired.

On May 9, the jury was selected and sworn, and the trial was then adjourned to the following day, when presentation of evidence began. On May 10, defendant moved to dismiss the information, contending that the trial was not commenced, under the limitation statute, until evidence was presented by the State.

Section 795.2 requires the defendant to be "brought to trial" within the prescribed period. Defendant contends that swearing of the jury is not sufficient to constitute bringing the defendant to trial, although apparently conceding the general rule to be that jeopardy attaches at that point. *See e. g., State v. Watts*, 244 N.W.2d 586, 588 (Iowa 1976); *State v. Birkestrand*, 239 N.W.2d 353, 363 (Iowa 1976). A similar issue was presented in *People v. Katzman*, 258 Cal.App.2d 777, 66 Cal.Rptr. 319 (1968). A California statute required a "bringing to trial" of cases within a prescribed time. The Court said:

We have found no cases on the subject of what constitutes a "bringing to trial" of a case for purposes of section 1382, subd. 2. It would seem that the impaneling of the jury, which took place in this case on March 22, should constitute a bringing to trial. That event is significant in determining when a defendant has been placed in jeopardy so that an action against him can be dismissed without prejudice. [Cases cited.] It is inconsistent to state that a defendant is in jeopardy when the jury has been impaneled yet has not been brought to trial for purposes of the speedy trial requirement of section 1382. We therefore conclude that defendant Sahati was brought to trial within 10 days of March 14 and hence that the trial court complied with the mandate of section 1382.

*Id.*, 258 Cal.App.2d at 788–89, 66 Cal.Rptr. at 327–28.

■ We agree with the reasoning in *Katzman* and now hold that a defendant is "brought to trial" under § 795.2, The Code, when the jury is impaneled and sworn. The State raises an additional issue, con-

tending the defendant was not entitled to a dismissal even if not brought to trial on May 9. It contends that the total elapsed time from indictment to trial must be computed, and from that total the number of days covered by the waiver must be deducted. If the net exceeds 60 days, defendant has not been brought to trial within the prescribed time. It cites *State v. Wood*, 241 N.W.2d 8, 13–14 (Iowa 1976) in support. We need not decide whether such reasoning is applicable here, in view of our holding, but note that *Wood* involved a period of *inability* to stand trial, not merely a period of waiver.

■ III. *Sufficiency of the evidence.* Defendant also contends that the trial court erred in denying his motion for directed verdict which challenged the sufficiency of the evidence. In considering the propriety of the court's ruling on the directed verdict, we must view the evidence in the light most favorable to the state, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered to supplement that evidence. *See State v. Overstreet*, 243 N.W.2d 880, 883 (Iowa 1976).

When this rule is applied to this case, the evidence shows that the defendant and another man, at approximately 2:45 a. m., drove around the store which was the subject of the break-in. They parked the car and walked back toward the store. They ducked out of sight when a car drove by, then walked to the rear of the store. A sheriff's deputy then heard the sound of breaking glass and pounding of wood. This officer called for assistance, and the man earlier observed with defendant was seen running from the scene. Defendant was found barefoot hiding approximately 65 feet from the scene of the break-in attempt. The store had a broken rear window, and a latch on the window had been opened. The back door to the store had been jimmied, and a bracket on the door was bent. The store owner testified that these conditions occurred after he closed the store a few hours earlier. Defendant's boots were found near the scene.

Defendant contends the State has failed to prove the "corpus delicti" of the crime; that the evidence and damage to the building did not establish an attempt to commit a crime, because it might have been the result of accident or "foolishness." *State v. Dunn*, 199 N.W.2d 104, 108 (Iowa 1977) discusses the elements in proving the body of the crime: (1) that a certain result has been produced, such as a "man has died, or a building has been burned, or a piece of property is not in the owner's possession," and (2) that someone is criminally responsible for the results. We noted that the corpus delicti is provable by circumstantial evidence and its establishment may be aided by the facts presented to show defendant's personal responsibility. *Id.*, at 109. We said that "the mere possibility that the [act] was . . . innocent of criminal intent, does not demand an acquittal, for the jury must act on probabilities, not possibilities." *Id.*, quoting Curtis, Law of Arson § 486, at 533:

■ The results produced, i. e., the damage to the building, is not disputed, and there was sufficient evidence from which the jury could infer the acts were done with criminal intent and not accidentally.

Defendant also contends the State has failed to prove his personal participation in the crime. We find the evidence as discussed above is sufficient on this issue.

The trial court was correct in denying the motion for directed verdict.

AFFIRMED.

156 (a)

Room (16 feet x 30 feet) showing arrangement of court furniture in the basement of the Ida Grove Post Office and used for felony criminal trials during the month of May, 1978.